*894 OPINION.
Smith :
For each of the years 1920 to 1925, inclusive, the petitioner is claiming a deduction for depreciation of the above described leasehold on the basis of a value at March 1, 1913, of not less than $750,000. The respondent denies that the leasehold in question had any value at that date. For the years 1920 and 1921 the petitioner is claiming the right to special assessment under the provisions of section 327 of the Revenue Acts of .1918 and 1921. In its petitions for the years 1920 and 1921 petitioner alleges as further errors that the respondent failed to make any allowance for leasehold value in its invested capital for those years, and failed to reflect in invested capital the proper adjustment of taxes for prior years. In its brief petitioner states that it does not press the issue relating to statutory invested capital.
The evidence before us fairly supports the petitioner’s contention that the leasehold had a substantial value at March 1, 1913. This was attested by witnesses who were familiar with real estate matters generally in New York City and who had particular knowledge of conditions in the immediate vicinity of the leasehold site. These witnesses pointed out, especially, the unusual and favorable features of the lease itself. The more important of these are stated in the *895 above findings of fact. The ground rental of $55,000 per year was said to be comparatively low and apparently based upon an undervaluation of the land. There was a liberal building loan to be made by the lessor at a comparatively low interest rate and with an easy plan for the repayment of the principal, that is, at the rate of $50,000 every five years. The amount of the securities, $150,000, required to be deposited by the lessee as a guaranty for the completion of the building was comparatively small.
During the interval from 1911, the time the lease was made, until March 1, 1913, the Fourth Avenue district had been undergoing a conxplete change in character and was fast becoming one of the leading business districts of the city. Prior to March 1, 1913, many of the leaders in the silk, woolen, and other trades were permanently established within the district. At that time the petitioner had already rented more than half of the space in the Hess building at gross annual rentals of nearly three times the annual rent it was obligated under the terms of the lease to pay. Some of its tenants were large and highly reputable concerns. The evidence clearly shows, we believe, that at March 1, 1913, the petitioner was practically assured of a substantial profit from the operation of the Hess building. The evidence does not, however, afford us any very satisfactory means of determining in dollars and cents the capital value of the leasehold. The petitioner contends that the fair market value of the leasehold was $750,000, and a witness, well qualified to give an opinion as to the value on March 1, 1913, placed it at approximately $1,000,000, or a minimum of $700,000. It appears to us, however, that this estimate is prompted in part by hindsight and is not based upon facts existing on March 1, 1913. Opinion evidence is only a factor to be taken into consideration in determining the value of the leasehold. Bogle & Co. v. Commissioner, 26 Fed. (2d) 771. The large profits from the operation of the building arising in years subsequent to 1920 appear to us to be based in part at least upon the general increase in rents in the City of New York subsequent to the war period. It is hardly possible that this general increase could have been foreseen at March 1, 1913. Upon careful consideration of all of the evidence, we are of the opinion that the leasehold had a fair market value at March 1, 1913, of $500,000. Deductions for exhaustion during the tax years involved should be computed on that basis.
In respect of its claim for special assessments for the years 1920 and 1921, the petitioner relies upon the facts that no allowance was made in its invested capital on account of the value of the leasehold, and that the stockholders made valuable contributions to the business for which they received no consideration.
*896 We are unable to find from the evidence that the leasehold had any material value at the time it was paid in to the corporation. That point was raised in the issue above referred to relating to statutory invested capital. The evidence does show that Nathaniel J. Hess and Edwin H. Hess, two of the petitioner’s stockholders, who also composed the partnership of M. & L. Hess, performed the greater part of the work of constructing the Hess building and that Hirschhorn, the third stockholder, deposited his personal securities, the value of $150,000, as a guaranty for the completion of the building, and also that the three stockholders joined in the lease as guarantors for the petitioner. We do not see, however, that these facts bring the petitioner within the purview of section 327 of the Revenue Acts of 1918 and 1921. We do not know what was the actual value of the services performed, gratis, by the stockholders, or what would have been the cost of the same services performed by others for the usual and ordinary considerations. It has not been shown that the respondent was unable to determine the petitioner’s invested capital, or that the facts stated were productive of an abnormality affecting, to any appreciable extent, the petitioner’s capital or income during the years 1920 and 1921. The respondent is therefore sustained upon this point.

Judgment will l>e entered under Rule 50.